**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000886
26-FEB-2019
07:44 AM**

NO. CAAP-15-0000886

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

JF, Petitioner-Appellee,
v.
LR, Respondent-Appellant,
and
CHILD SUPPORT ENFORCEMENT AGENCY, STATE OF HAWAI'I,
Respondent-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-P NO. 13-1-0757)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Chan, JJ.)

This appeal arises out of post-judgment proceedings for a paternity case between Respondent-Appellant LR (Mother) and Petitioner-Appellee JF (Father), where the main issue is custody over their biological child (Child). Mother appeals from: (1) the "Order Re Petitioner's Motion for Relief from Order or Judgment Filed November 20, 2014" (Order Re: Father's Motion for Relief), filed on June 1, 2015; and (2) the "Order Granting in Part and Denying in Part Defendant [Mother's] Motion to Amend and Clarify the [Order Re: Father's Motion for Relief]" (Order Re: Mother's Motion to Amend and Clarify), filed on October 1, 2015, in the Family Court of the First Circuit (Family Court).[1]

On appeal, Mother asserts the following points of

---

[1]     The Honorable Linda S. Martell presided.

error:

(1) the Family Court erred in making findings of fact (FOFs) 13, 20, 27, 40, 48, 49, and 50 in its March 24, 2016 Findings of Fact and Conclusions of Law (March 24, 2016 FOF/COL);

(2) the Family Court erred in making conclusions of law (COLs) 2, 3, and 20 in its March 24, 2016 FOF/COL;

(3) the Family Court erred in concluding that there were "numerous instances where Mother failed to cooperate or did not cooperate fully in following court orders" and by making FOF/COL 1 in its June 1, 2015 Order Re: Father's Motion for Relief;

(4) the Family Court failed to make adequate and sufficient FOFs in its March 24, 2016 FOF/COL regarding the existence or non-existence of child support arrears owed by Father;

(5) the Family Court erred in its application of the "material change of circumstances" test to Father's November 2014 Motion for Relief After Judgment or Order and Declaration (Father's Motion for Relief);

(6) the Family Court erred in its application of the "best interests of the child" test to Father's Motion for Relief; and

(7) the Family Court erred in holding an evidentiary hearing on Father's Motion for Relief without requiring the parties to first submit to mediation.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Mother's points of error as follows.

## I. BACKGROUND

On May 30, 2014, the Family Court entered its Decision and Order (May 2014 Order) which awarded Mother sole physical custody and Mother and Father joint legal custody. The order also imposed conditions on Mother to ensure that she would refrain from engaging in "gatekeeping" and obstructionist

2

behaviors.

On November 20, 2014, Father sought sole physical and legal custody of Child through Father's Motion for Relief. On April 1, 2015, the Family Court held a hearing on Father's Motion for Relief. On June 1, 2015, the Family Court issued its Order Re: Father's Motion for Relief, finding that Mother's inability to facilitate Child's relationship with Father and to promptly and fully follow court orders constituted a material change of circumstances, and awarded sole physical and legal custody of Child to Father.

On June 10, 2015, Mother filed "Defendant [Mother's] Motion to Amend and Clarify the Order Re: Father's Motion for Relief" (Mother's Motion to Amend and Clarify), in which she requested to amend and clarify the Order Re: Father's Motion for Relief as to (1) Mother's timesharing schedule with Child; (2) Mother's access to information about Child from service providers; and (3) whether mediation is still a condition. On October 1, 2015, the Family Court issued its Order Re: Mother's Motion to Amend and Clarify. After being notified of this appeal, the Family Court issued its March 24, 2016 FOF/COL with regard to its Order Re: Father's Motion for Relief and Order Re: Mother's Motion to Amend and Clarify.

## II. STANDARDS OF REVIEW

### A. Findings of Fact

A family court's findings of fact are reviewed under the "clearly erroneous" standard. In re Doe, 101 Hawai'i 220, 227, 65 P.3d 167, 174 (2003). Under this standard, a finding of fact will not be disturbed unless "(1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." In re Doe, 101 Hawai'i at 227, 65 P.3d at 174 (quoting State v. Okumura, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995)). "Substantial evidence" is defined as "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a

3

conclusion." In re Doe, 101 Hawai'i at 227, 65 P.3d at 174 (quoting In re Jane Doe, 84 Hawai'i 41, 46, 928 P.2d 883, 888 (1996)).

B.  Conclusions of Law

A family court's conclusions of law "are reviewed on appeal de novo, under the right/wrong standard . . . [and] consequently, are 'not binding upon an appellate court and are freely reviewable for their correctness.'" Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001)). A conclusion of law "that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." Chun v. Bd. of Trs. of Emps.' Ret. Sys. of State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (citation omitted); Schiller v. Schiller, 120 Hawai'i 283, 288, 205 P.3d 548, 553 (App. 2009).

C.  Family Court Decisions Regarding What Constitutes a Child's "Best Interests"

"The trial court possesses broad discretion in making custody decisions and in its determination of what is in the best interests of the child." A.A. v. B.B., 139 Hawai'i 102, 106, 384 P.3d 878, 882 (2016) (citation omitted). We review the Family Court's determination that a custody arrangement is in a child's best interests under the abuse of discretion standard. In re Doe Children, 96 Hawai'i 272, 283, 30 P.3d 878, 889 (2001).

### III.  DISCUSSION

A.  FOFs 13, 20, 27, 40, 48, 49, and 50 in the March 24, 2016 FOF/COL

Mother argues that FOF 13[2] was clearly erroneous because the record lacks substantial evidence to support the

---

[2]  FOF 13 provides:

13. Father's earlier issues with substance abuse addiction and his eventual successful rehabilitation were raised in this trial. The evidence showed Father maintained his sobriety and was working as an attorney at a small firm in Kailua, and was in a stable and supportive relationship with his girlfriend.

notion that Father had showed his "successful rehabilitation" at the time of the trial leading up to the May 2014 Order. Mother contends that "the road to recovery is a long one" and that successful rehabilitation "does not happen over the course of less than two years." This appeal is limited to the Order Re: Father's Motion for Relief and the Order Re: Mother's Motion to Amend and Clarify. FOF 13 discusses a substantive finding by the Family Court made with regard to the May 2014 Order, which is not a subject of this appeal. Consequently, we decline to address the asserted error.

Mother argues that FOF 20[3] was clearly erroneous because Mother had offered to use Face Time because of her difficulties using Skype, but Father insisted that she use Skype. FOF 20 simply states the fact that in his motion for relief, Father alleged, among other things, that there was difficulty maintaining telephone and video conferencing contact between Child and Father on a regular basis. This FOF describes the allegations made in Father's Motion for Relief and does not make a substantive finding that the allegations were indeed true. We conclude that the Family Court did not err in FOF 20.

Mother argues that FOF 27[4] was clearly erroneous because she had in fact "revealed" that she did not obtain medical insurance for Child or enroll him in therapy for counseling as early as August 10, 2014. In support of this

--------------------------------------------------

[3] FOF 20 provides:

20. On November 20, 2014, Father filed [his Motion for Relief], alleging that Mother had failed to comply with material terms of the [May 2014] Order by refusing to cooperate with Father regarding Child's upcoming Winter Break visitation, among other things, including difficulty maintaining telephone and Face Time contact with Father on a regular basis and setting up information and photo sharing with Father as previously ordered.

[4] FOF 27 provides:

27. Among other things, Mother revealed for the first time [in her Memorandum in Opposition to Father's Motion for Relief, filed on March 31, 2015,] that she did not obtain medical insurance for Child and did not enroll him in therapy for counseling since she left the State of Hawaii on August 2, 2014. Further, Mother had failed to notify Father of this lapse in coverage and therapy for Child.

contention, Mother directs us to text messages between her and Father where she told Father that she had to make an election on Child's insurance that week, evidently showing that medical insurance had not been obtained as of that text message. Our review of the record reveals substantial evidence in support of FOF 27. Mother relocated to California with Child on August 2, 2014. Just over a week later, on August 10, 2014, Mother sent Father a text message stating, "you still have never provided any info on your insurance options for [Child]. I have to make an election this week and the cost will be shared by you." Although this text message serves to show that on that date, Father was or should have been on notice that Mother had yet to obtain medical insurance for Child, it also serves to show that Father could have expected that Mother would be making the election that week.[5] The record shows Father's multiple requests, after Mother and Child relocated to California, for Mother to send information regarding providers and the need to have Child attend therapy, which went unresolved. Based on our review of the record, Mother did not inform Father about Child's insurance coverage until her email on March 28, 2015, in which she lists various updates in Child's life, including a description of her unsuccessful efforts to obtain cost-sharing subsidies for health insurance and her final decision to purchase private insurance. There was substantial evidence that Mother failed to keep Father fully informed as to Child's lapse in coverage and therapy.

Mother argues that FOF 40[6] was clearly erroneous because she had no such "continuing inability to act in a manner

---

[5]     Pursuant to the May 2014 Order, Mother had the responsibility of obtaining medical insurance for Child. The May 2014 Order specifically provided: "In granting [Mother's] request to relocate to California, the Court orders Mother to obtain health insurance coverage for [Child] in California and dental, vision and prescription drug coverage if available through her employment."

[6]     FOF 40 provides:

    40. Over the course of these proceedings, particularly during and at the close of the May 2014 Trial and the April 2015 Trial, the Court remained concerned over Mother's continuing inability to act in a manner that would serve Child's best interests and facilitate Child's relationship with Father.

that would serve Child's best interests and facilitate Child's relationship with Father." To support this, she points to her arguments discussed *infra* in Sections III.D-F: that she substantially complied with the order; that financial difficulties, due in part to Father's alleged owing of child support arrears, played a role in her delayed compliance; and that she did more than necessary to facilitate the relationship. As discussed further in Section III.F, we conclude that there was substantial evidence that Mother consistently acted in a manner that did not facilitate Child's relationship with Father and serve Child's best interests, and thus, that FOF 40 was not clearly erroneous.

Mother argues that FOF 48[7] was clearly erroneous because she substantially complied with the May 2014 Order. She seems to argue that any noncompliance was reasonable in light of her good faith effort to comply despite the financial difficulties related to Father's alleged owing of child support arrears and Father's failure to facilitate her compliance with the order. The record contains substantial evidence that Mother did not comply with the conditions and requirements in the May 2014 Order. In fact, even Mother herself admits that she has not complied with the conditions. Accordingly, we conclude that FOF 48 is not clearly erroneous.

In arguing that FOF 49[8] was clearly erroneous, Mother appears to assert that because the Family Court agreed with her on one issue regarding Father's handling of the Shutterfly

---

[7]  FOF 48 provides:

   48. Mother did not comply with the conditions and requirements in the [May 2014] Order.

[8]  FOF 49 provides:

   49. The Court disagreed with Mother's arguments that those failures were not material, that Mother's failures were the understandable or excusable result of misunderstanding or vagueness in the [May 2014] Order, and that Child's best interests would be best served by allowing Mother to retain legal and physical custody of Child.

website,[9] it should also have agreed with her contention that her noncompliance with the May 2014 Order was not material. We find no merit to this argument. Although the Family Court did indeed acknowledge and agree with Mother's concerns about Father's attorney having access to the photo and event sharing website, the Family Court never agreed with Mother that her noncompliance was not material. The purpose of setting up the website was to facilitate open communication and keep both parties updated as to events in Child's life. Her failure to use the website was just one of several material violations of the May 2014 Order. Mother also argues that FOF 49 was clearly erroneous because the Family Court did not make a determination that the Order Re: Father's Motion for Relief, which awarded custody of Child to Father, was in Child's best interests. This argument is also without merit. Taken in context, in COL 3, discussed further in Section III.B, the Family Court concluded that the Order Re: Father's Motion for Relief was in the best interests of Child, based on the evidence presented at the April 1, 2015 hearing.

Mother argues that FOF 50[10] was clearly erroneous because she did not demonstrate any pattern of obstructing Father's relationship with Child, anger and resentment towards Father, and sharing of her negative feelings about Father to Child. She appears to argue that her reasons for her noncompliance with the May 2014 Order were also reasons to excuse any alleged obstruction of Father's relationship with Child. Our review of the record indicates that Mother continued to maintain an overall resentful attitude toward Father, did not perform simple tasks to facilitate the Child's relationship with Father,

---

[9]     Specifically, in reference to the viewing permissions of the Shutterfly page, the Family Court stated, "I think it's a little weird to have your attorney on there, I do agree . . . I would take . . . [your attorney] off there." It went on to explain "I'm not saying it's bad, I'm not saying it's good, but I can see from her perspective it would give me pause because then she gotta worry about everything she says . . . ."

[10]     FOF 50 provides:

> 50. Mother demonstrated a consistent pattern of obstructing Father's relationship with Child, anger and resentment towards Father, and sharing her negative feelings about Father with Child.

and when she did make an effort, it was done reluctantly. There is substantial evidence to support the finding by the Family Court that Mother demonstrated a pattern of displaying obstructive behavior and negative feelings toward Father. Thus, we conclude that FOF 50 was not clearly erroneous.

We conclude that the Family Court's FOFs challenged by Mother are grounded in substantial evidence, and therefore are not clearly erroneous.

**B.   COLs 2, 3, and 20 in the March 24, 2016 FOF/COL**

Mother argues that COL 2[11] in the March 24, 2016 FOF/COL is erroneous because Father did not prove by a preponderance of significant evidence that there was a material change of circumstances. Mother argues that there was no justification for the change in custody arrangement where Mother made substantial, good faith efforts to comply with the May 2014 Order. Mother also argues that merely not complying with the conditions in the order did not amount to a material change of circumstances warranting a change in custody. As discussed *infra* in Section III.E, we disagree and conclude the Family Court did not err in COL 2.

Mother also argues that COL 3[12] in the March 24, 2016 FOF/COL is erroneous because Father did not prove by a preponderance of the evidence that it was in Child's best interest for Father to have sole physical and legal custody.

---

[11]   COL 2 provides:

> 2.   By the credible and reliable evidence adduced at trial, Father proved a material change of circumstance by a preponderance of .significant evidence sufficient to change physical and legal custody from Mother to Father. Id.[; see also] Carr v[]. Buenger, [No. CAAP-11-0000545, 2014 WL 2440185, at *11 (Haw. App. May 30, 2014) (Mem. Op.)] (A high level of conflict between parents is sufficient to constitute a material change of circumstances).

[12]   COL 3 provides:

> 3.   After the Court found a material change of circumstance, the legal issue then shifted to whether it was in Child's best interest for Father to have sole physical and legal custody. Egger[ v. Egger], 112 Hawai'i [312,] 318, 145 P.3d [855,] 861[ (App. 2006)]. The reliable and credible testimony adduced at trial proved that it was Child's best interest for Father to have sole physical and legal custody, by a preponderance of the evidence. Id.

Mother argues that the Family Court did not consider multiple relevant factors in determining the best interests of the child. As discussed *infra* in Section III.F, we disagree and conclude the Family Court did not err in COL 3.

Mother argues that COL 20[13] was erroneous because the disputes in question were the result of good faith disagreements about how to arrange for Child's travel, and not the result of any "unreasonable refusal to cooperate." The record indicates that Mother was unresponsive to Father's requests to discuss and make arrangements for Child's travel during Christmas vacation.[14] The record also indicates that through Father's Motion for Relief, the Family Court was required to resolve the dispute regarding Christmas break visitation because the parties were unable to come to an agreement in a timely manner. COL 20 is not erroneous.

We conclude that the Family Court's COLs challenged by Mother are not erroneous.

## C.    June 1, 2015 Order Re: Father's Motion for Relief

In its June 1, 2015 Order Re: Father's Motion for Relief, the Family Court stated that Father filed his motion for relief "due to numerous instances where Mother failed to cooperate or did not cooperate fully in following court orders, including the scheduling of [Child's] Christmas visitation with Father . . . ." The Family Court also stated that "Mother's

---

[13]    COL 20 provides:

> 20.  Furthermore, the Court has already had to resolve one dispute between the parties regarding Christmas visitation for Child.  In this dispute, Mother unreasonably refused to cooperate with Father with arranging visit, including timing, travel, cost, and logistics.  Adding another opportunity for such a dispute to arise would, at this juncture, be premature.

[14]    Father sent Mother an email on October 12, 2014, detailing his request and explaining the difference in price between flights scheduled for December 21 and returning January 2 and flights scheduled for December 16 and returning December 29.  Father followed up the email with a text message on October 16, 2014, to which Mother responded briefly with a disagreement over when Child's winter break technically began.  Father sent Mother a text message two days later asking Mother to respond to his request about making travel arrangements, to which Mother never responded.  On November 26, 2014, Mother finally responded to Father's counsel's email regarding Christmas vacation visitation plans, stating that it was her first time seeing the email.

consistent inability to facilitate [Child's] relationship with Father, and to promptly and fully follow court orders shall constitute a material change of circumstances." Mother argues that the Family Court clearly erred in making these rulings.

The May 2014 Order provided, in relevant part:

Mother's violation of the Parental Civility Rules, the specific items set forth in [the May 2014 Order's provision concerning therapy for Child], and/or her engaging in significant "gatekeeping activities" interfering in Father's relationship and visitation with [Child] shall be considered a material change in circumstances, resulting in a change of [Child's] physical custody to Father upon his motion to the Court.

We interpret this provision as an explicit warning to Mother that a violation of the May 2014 Order's terms would have serious consequences. The Family Court noted in its March 24, 2016 FOF/COL[15] that it was concerned with the possibility that Mother would use Child in her anger directed at Father and thus incorporated certain terms in the May 2014 Order to address those concerns. Mother's subsequent actions, as discussed in Section III.F, proved the Family Court's concern and thus supported the rulings challenged by Mother.

D. **Child Support Arrears**

Mother next argues that the Family Court failed to make adequate FOFs regarding the existence or non-existence of Father's child support arrears. She asserts that the Family Court failed to weigh the existence (or non-existence) of child

---

[15] FOFs 14 and 16, which are uncontested, provide, in relevant part:

14. Based on the testimony and evidence at trial, however, the Court demonstrated concern over Mother's "gatekeeping" and obstructionist behaviors, among other things. Specifically, the Court was concerned about Mother using Child as a pawn in her dealings with Father as demonstrated by her anger towards him for leaving their relationship, her resulting interference with the relationship between Father and Child, her negative statements to Father's girlfriend in [sic] with Child present, and her propensity to share her negative feelings about Father with Child, including but not limited to such statements that Father "ruined our lives." At the close of trial, the Court shared its concerns with the parties and counsel, and encouraged the parties to work together as co-parents for Child's best interests.

16. To address the Court's concerns about Mother that it previously shared with the parties and their counsel, the Court imposed certain conditions on Mother.

support arrears when it conducted its analyses of material change of circumstances and best interests of the child.

Mother did not raise the issue of past due child support as a basis for her opposition against Father's Motion for Relief, nor did she raise it in her Motion to Amend and Clarify. The Family Court thus did not address this issue in its FOFs. Consequently, we decline to address this contention on appeal.

**E.    Material Change of Circumstances**

The May 2014 Order provided that violations of its provisions would constitute a material change of circumstances resulting in a change of Child's physical custody to Father. Mother contends that she made a good faith effort to substantially comply with the May 2014 Order and that Father did little to facilitate her compliance. Therefore, Mother argues, the Family Court clearly erred in modifying the custody arrangement established by the May 2014 Order because there was no material change of circumstances to justify doing so.

In Waldecker v. O'Scanlon, 137 Hawai'i 460, 375 P.3d 239 (2016), the Hawai'i Supreme Court overruled previous decisions of this court requiring a material change of circumstances for modification of a custody order. The supreme court held that:

> the requirement of a material change in circumstances is inconsistent with [Hawai'i Revised Statutes (HRS)] § 571-46. Accordingly, we overrule Nadeau[ v. Nadeau, 10 Haw. App. 111, 861 P.2d 754 (1993),] and Hollaway[ v. Hollaway, 133 Hawai'i 415, 329 P.3d 320 (App. 2014),] to the extent they suggest that a material change in circumstances is required before the court can consider the best interests of the child in modifying a custody order. Rather than that two-step analysis, there is a single inquiry which focuses on the best interests of the child.

Waldecker, 137 Hawai'i at 470, 375 P.3d at 249. Thus, we reject Mother's argument that the Family Court erred in modifying the custody arrangement because Father failed to show a material change in circumstances.

**F.    Best Interests of the Child**

Mother contends that the Family Court did not properly consider all the factors relevant in an analysis of the best interests of the child, as enumerated in HRS § 571-46(b) (2014).

12

Specifically, she argues that the Family Court should have considered the following: (1) that Mother had been the primary caregiver for most of Child's life; (2) Father's past drug or alcohol abuse and the risk of relapse; (3) that Child had been excelling in school in California, was involved in his community and extracurricular activities, and had close relationships with his cousins residing nearby in California; and (4) that Child may have been subjected to inappropriate touching from Father's girlfriend's son. Mother also contends that the Family Court ordered conditions that were "drastic, unnecessary and disproportionate."

The Family Court made its decision to award physical custody to Father after holding a trial at which both parties were allowed to present evidence on the custody issues. The Family Court's ultimate custody decision was based on the evidence adduced at trial pertaining to Mother's noncompliance with the conditions of the May 2014 Order which were meant to serve the Child's best interests and facilitate Child's relationship with Father. For example, Mother failed to obtain medical insurance for Child in a timely manner, Mother showed little effort to set Skype up for video calls between Child and Father, Mother was frequently present or nearby Child during phone calls or video calls with Father, Mother did not update the Shutterfly website with pictures or events and even characterized the website as a "game" that the Family Court judge "bought[,]" and Mother was uncooperative in coordinating the Christmas break visitation. On this record, the Family Court did not abuse its discretion in reaching its custody decision.

**G. Mediation**

Mother argues that the Family Court abused its discretion by not requiring the parties to submit to mediation as it had required in the May 2014 Order. The May 2014 Order required that "[t]he parties shall first mediate disputes before bringing them to Court and both parties shall mediate in good faith." In describing his efforts to resolve the issues in Father's Motion for Relief, Father stated:

> Before [Mother] left with [Child] to relocate to California, [Father] participated in joint sesssions [sic] with [Mother] and [Child's] former therapist in Honolulu and sent numerous texts and emails to [Mother] in an attempt to reach agreement on certain points of contention. Those efforts were unsuccessful. Since [Mother] relocated to California, [Father] attempted to continue those efforts via email and text; again, those efforts have been unsuccessful. Mediation with [Mother], who lives in California, would be impracticable and futile.

In her memorandum in opposition to Father's Motion for Relief, Mother disagreed with Father's contention that mediation would have been impracticable and futile. She also indicated her willingness to mediate and pay fifty percent of the reasonable costs for mediation. The Family Court ultimately did not require the parties to mediate before entering its Order Re: Father's Motion for Relief.

In its March 24, 2016 FOF/COL, the Family Court concluded that "at this point in these proceedings, attempting mediation may be impractical and/or futile. The parties should not be bound to engage in an exercise in futility before seeking appropriate relief through the Court . . . ." Mother asserts that the Family Court "prematurely inserted itself into a dispute because mediation *might* not have resolved the matter . . . ." Thus, she argues, the Family Court's handling of the matter amounted to an abuse of discretion. We disagree.

There is considerable evidence in the record showing Mother's obstruction of Father's relationship with Child, her anger and resentment towards Father, and her failure to communicate effectively with Father. With such a high conflict relationship already existing, it was reasonable for the Family Court to conclude that any attempts at mediation between the parents would be impractical or futile. We conclude that the Family Court did not abuse its discretion.

## IV. CONCLUSION

Based on the foregoing, the "Order Re Petitioner's Motion for Relief from Order or Judgment Filed November 20, 2014," filed on June 1, 2015, and the "Order Granting in Part and Denying in Part Defendant [Mother's] Motion to Amend and Clarify

the 'Order Re: Petitioner's Motion for Relief from Order or Judgment Filed November 20, 2014,' Filed on June 1, 2015," filed on October 1, 2015, in the Family Court of the First Circuit are affirmed.

   DATED: Honolulu, Hawai'i, February 26, 2019.


On the briefs:

Matthew Mannisto
for Respondent-Appellant.

JF
Pro Se, Petitioner-Appellee.

Chief Judge

Associate Judge

Associate Judge